UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES DAHER JR., | ) |
| | ) |
| Plaintiff | ) |
| | ) CAUSE NO. 3:06-CV-092 RM |
| v. | ) |
| | ) |
| BARBARA KASPER, *et al.*, | ) |
| | ) |
| Defendants | ) |

OPINION AND ORDER

James Daher, Jr., a *pro se* prisoner, filed a civil rights action seeking declaratory, monetary, and punitive damages under 42 U.S.C.A. §1983 alleging correctional facility employees retaliated against him for exercising his First Amendment rights. The defendants seek summary judgment on the grounds that Mr. Daher did not exhaust his administrative remedies, as 42 U.S.C. §1997e(a) requires. Mr. Daher timely filed a response, to which the defendants replied.

I. SUMMARY JUDGMENT STANDARDS

The standard for reviewing a summary judgment motion is the same regardless of whether a party is represented by counsel. Outlaw v. Newkirk, 259 F.3d 833, 836-837 (7th Cir. 2001).

> [T]he plain language of [FED. R. CIV. P.] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as

> to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex v. Catrett, 477 U.S. 317, 322-23 (1986). When a defendant has proven an affirmative defense, there is no genuine issue of material fact unless the plaintiff presents evidence requiring a factual determination as to an element of the affirmative defense.

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 127 S. Ct. 1769, 1776 (2007) (citations, quotation marks, ellipsis omitted).

## II. EXHAUSTION

In pertinent part, 42 U.S.C. § 1997e(a) provides that, "No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Accordingly, this statute requires that Mr. Daher utilize whatever administrative grievance

2

system is available to him before he can file a lawsuit in federal court and applies individually to each of Mr. Daher's claims. *See* Woodford v. Ngo, 126 S.Ct. 2378, 2382-2383, 2386-2387 (2006); Kaba v. Stepp, 458 F.3d 678, 683-684 (7th Cir.2006); Pozo v. McCaughtry, 286 F.3d 1022, 1023 (7th Cir.2002). Failure to exhaust administrative remedies under §1997e(a) is an affirmative defense that the defendant must plead and prove. Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532 (7th Cir. 1999).

### III. BACKGROUND

Mr. Daher's claim the defendants retaliated against him for exercising his First Amendment rights is the sole claim that survived screening. In support of their motion for summary judgment and as the basis for their statement of undisputed material facts, the defendants submitted the declaration of grievance specialist, Amy Clark, with accompanying exhibits. When Mr. Daher's claims arose, the facility had a five-step grievance procedure in place and retaliatory staff conduct could be grieved. Departmental rules require any grievance to be filed within 48 working hours of the conduct giving rise to the complaint. Ms. Clark maintains records of prisoners' grievances. Her review of these records disclosed no grievance specifically naming the defendants and alleging they "retaliated or conspired to retaliate against Mr. Daher in response to Mr. Daher's actions during July 2003 to July 2004", the relevant time frame. She discovered 2 grievances that Mr. Daher filed during that period. The first is under log number 2004-4-39 filed April 5, 2004; the defendants submitted a copy of the step one grievance for this log number. At that point, Mr. Daher complained he was removed from all library count letters and wrongfully

3

terminated as a library clerk. In the second grievance, filed August 25, 2003, under log number 2003-9-181, the defendants submitted a copy of the steps one and five grievances for this log number. In these, Mr. Daher asserted that his legal work was taken away and not returned.[1]

Mr. Daher disputes the defendants' contention that he didn't exhaust the facility's grievance process regarding his claims of "retaliation and conspiracy." He filed a motion opposing summary judgment supported by his affidavit and accompanying exhibits. Mr. Daher insists the retaliation claim was presented in grievances "by inference, by direct claim, and explanation of events to and by defendants." Mr. Daher also submitted copies of five grievances that he filed. These include grievance steps one through five pertaining to log number 2003-9-181, regarding seizure of legal papers during an alleged retributive shakedown, and the step five regarding log number 2004-4-39, involving efforts to regain legal papers. Grievance log numbers 2003-9-181 and 2004-4-39 were the two grievances Amy Clark found. Mr. Daher also proffered grievance steps: (1) one through five for log number 2004-7-63, concerning the shakedown of his cell; (2) one through four in log number 2005-6-138 about a policy change for providing and receiving legal assistance to and from other prisoners; and (3) one and two for log number 2004-4-183 addressing his inability to obtain legal assistance.

In their reply, the defendants reasserted their claim that Mr. Daher didn't exhaust his

---

[1] Previously, as an exhibit to the complaint Mr. Daher included the step five segment of grievance log number 2004-4-39.

administrative remedies; they also argued Mr. Daher "failed to properly comply with rules for grieving these incidents by failing to name individuals he is now suing." The defendants' supplemental materials filed with their reply include the manual that sets forth the grievance procedures upon which the defendants base this argument. One procedure provides that a grievance which cites to "multiple unrelated incidents/issues is not an acceptable grievance." Another requires that the name of any staff member involved be included in the grievance along with other identifying information such as date time, witnesses, etc.

## IV. DISCUSSION

Three of the five grievances that Mr. Daher submitted in response to the defendants summary judgment motion — 2004-4-39, 2003-9-181, and 2004-7-63 — were pursued completely through all the grievance steps. Ms. Clark acknowledged that Mr. Daher pursued grievances 2004-4-39 and 2003-9-181 through step five of the process. The defendants maintain grievances 2003-9-181 and 2004-4-39 were not exhausted because they do not conform with the manual's grievance format, and so cannot be exhausted. Regarding grievance 2003-9-181, the defendants point out the operational procedures require any grievance to include, in the initiating grievance, the name of the staff involved. Because a single defendant was named in 2003-9-181's step one, the defendants maintain this grievance should be dismissed as to the other defendants who are not specifically named.

As already noted, the grievance procedure entails five steps. In accordance with the Indiana Department of Corrections' guidelines for writing a complaint or grievance, the

5

prisoner must name the offending staff person. Contrary to the defendants' understanding, however, the procedures don't mandate placement of the individual's name in the step one grievance. Identification of staff is necessary to provide notice to any accused as well as to ensure responsible parties are disciplined, if necessary. It is also desirable to identify those allegedly involved as soon as possible. In some circumstances, however, the aggrieved prisoner might not know the staff person and so cannot provide the name by the time the first grievance must be filed. Consequently, unless express language in the manual requires a prisoner to name the involved staff member in the initiating grievance, the court is unwilling to find it is required.

With respect to grievance 2004-4-39, the defendants argue that its step five demonstrates Mr. Daher tried to grieve an incident different from the one set forth in the step one, initiating grievance. Because the operational procedures demand that any particular grievance address a single incident, the defendants maintain this grievance was also unacceptable and, hence, unexhausted. Under the department's guidelines, grievances deemed unacceptable because they contain multiple, unrelated claims are returned to the prisoner. Where a complaint has "several aspects," the guidelines direct the grievance specialist to "instruct the offender to state complaints in a general way that encompasses all pertinent information." Nothing in the record indicates any of the grievances Mr. Daher presented were rejected because they included multiple, unrelated claims in a single grievance. The policy against joining multiple incidents in a single grievance expressly applies to "unrelated" incidents, but the manual doesn't define the term "unrelated".

6

Limiting the joinder of related occurrences in a single grievance implies a single grievance may address more than one related incident without running afoul of the guidelines.

Because every defendant is not named in each grievance at issue here and not every step of each grievance contains some variant of the word "retaliate", by implication, the defendants suggest they are necessarily "unrelated". While not all of the defendants are named in each, separate grievance, all but one of them are named in the group of grievances Mr. Daher filed. Moreover, he contends the incidents that he grieved were part of a series of ongoing acts taken to retaliate against him for exercising his constitutional rights. A jury reasonably could find his complaints had several aspects that he set forth generally in keeping with the guidelines' instructions. The defendants have not established these grievances did not comply with the grievance procedure, and so were not exhausted. Consequently, whether these events were unrelated so that their placement in a single grievance violated the IDOC's procedure is a material, disputed fact.

As for the remaining three grievances that Mr. Daher filed, for various reasons, the defendants assert they "may be dealt with in "short order" and are irrelevant. The defendants argue that grievance 2004-7-63 has no bearing on Mr. Daher's contentions because the responsible individuals were not identified and so were terminated from the case. This particular grievance is relevant to show Mr. Daher filed a grievance alleging retaliatory conduct which he pursued through all the steps. It also supports his claim that some of the defendants in this matter handled the grievances that he filed related to the alleged retaliatory conduct.

7

The maintain that Mr. Daher cannot show he pursued grievance log number 2004-4-183 through all five steps. Mr. Daher submitted copies of steps one and two pertaining to this grievance log number. Yet, he explicitly expressed his intent to exhaust the procedure with respect to that claim. In his affidavit, Mr. Daher unequivocally states that he repeatedly filed grievances on his claims that the defendants retaliated against him. Moreover, he maintains some of the people named as defendants reviewed some of the grievances that he filed, and accuses others of acting deliberately to prevent him from exhausting the grievance process. For example, in step five of grievance 2004-4-39 he wrote:

> Chris Johnson should not be answering step 4 of this grievance, as <u>he</u> was involved in getting us fired, and he is the one who <u>told</u> us to leave our legal work in the library  - per Sally Stevenson. When I was <u>kept</u> out of the library,..(docket # 26, attachment # 3, exhibit L, emphasis in original).

As the record in this case demonstrates, the absence of copies of the final steps as to a particular grievance is not proof it was not exhausted. Moreover, Mr. Daher alleges, and defendants admit, the facility retains prisoners' grievances. Despite this, the defendants produced only two, incomplete, grievance records to support their summary judgment motion while Mr. Daher tendered copies of five grievances that he filed between July 2003 to July 2004. Based on the plaintiff's exhibits and affidavit, a factfinder could reasonably determine the plaintiff exhausted every grievance that he filed. Under the circumstances, whether grievance 2004-4-183 was exhausted is disputed.

Finally, as to grievance 2005-6-138 regarding policy changes for prisoners' access to the courts, the defendants note this grievance avers that the defendants adopted the changes

8

to retaliate against the plaintiff. But they deny Mr. Daher's complaint presents such a claim and declare this grievance should be disregarded. As the defendants point out, this grievance doesn't correspond exactly to allegations in the complaint. But Section V of the complaint, "Cause of Action", in pertinent part, states generally that "defendants conspired to, and did, retaliate against the plaintiff for exercise of his first amendment rights." Of the ensuing, fifty-nine paragraphs, 20, 26, 27, 41, 46, 47, 48, and 49, specifically refer to policy changes governing use of the facility's law library as well as prisoners assisting other prisoners with legal work. As already noted, Mr. Daher explicitly complained the defendants engaged in a "series of acts" evidencing a "pattern of abuses" to deny him access to the courts. A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. Erickson v. Pardus, 127 S. Ct. 2197 at 2200 (2007). The complaint's allegations about the changes in policy governing prisoners assisting one another with legal work may be construed as encompassing the claims set forth in grievance log number 2005-6-138.

## IV. CONCLUSION

Mr. Daher's affidavit opposing summary judgment states that his claims were presented in various grievances "by inference, by direct claim, and explanation of events to and by defendants." The accompanying exhibits that he filed indicate that he pursued three of the five grievances through all the steps. Whether he completed the steps for the

remaining two is disputed as is the question of whether the completed grievances conformed with the grievance procedure manual. While no single defendant is named in all of the grievances and not all of the defendants are named in each grievance, all but one defendant, Janet Tuley, is named in the group of grievances Mr. Daher submitted. Based on the record before the court, the defendants have not carried their burden to show Mr. Daher did not exhaust the administrative remedies as 42 U.S.C. §1997e(a) requires.

Therefore, the court :

1. **DENIES** summary judgment (docket # 24) as to defendants, Barbara Kasper, Robert O. Moore, Sally Stevenson, Christopher Johnson, Brenda Bowman, Steve Stanton, John R. VanNatta, Traci Riggle, and Tamike Jones on the claim that plaintiff failed to exhaust his administrative remedies regarding the alleged retaliation against him for exercising his First Amendment rights.

2. **GRANTS** summary judgment as to Janet Tuley who was not mentioned in any grievance submitted in this matter.

SO ORDERED.

ENTERED:     February 26, 2008

　　　　　　　　　　　　　　　　　　   /s/ Robert L. Miller, Jr.
　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　United States District Court